Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5569; 02 C 3981 | **DATE** | 9/9/2004 |
| **CASE TITLE** | Yvonne Averhart vs. Michael F. Sheahan et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Defendants' Motion for Summary Judgment [#46] is hereby **granted.** AK

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | 3 number of notices |
| ✓ | Notices mailed by judge's staff. | SEP 10 2004 date docketed |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | docketing deputy initials |
| ✓ | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | date mailed notice |
| FT/ | courtroom deputy's initials | mailing deputy initials |

U.S. DISTRICT COURT CLERK
2004 SEP -9 PM 2:40

Date/time received in central Clerk's Office

Document Number 24

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| YVONNE AVERHART,<br><br>Plaintiff<br><br>vs.<br><br>MICHAEL F. SHEAHAN, The Sheriff of Cook County and COUNTY OF COOK,<br><br>Defendants. | ) | NO. 01 C 5569 & 02 c 3981<br><br>Magistrate Judge Arlander Keys |

DOCKETED
SEP 0 9 2004

**MEMORANDUM OPINION AND ORDER**

Defendants, Michael F. Sheahan and County of Cook ("Cook County"), move this Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff sued Defendants, claiming that her employer retaliated against her for exercising her rights under the First Amendment, and in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e *et seq.* (West 2003), and 42 U.S.C. § 1983 (West 2003). For the reasons set forth below, the Court grants Defendants' Motion for Summary Judgment.

**BACKGROUND FACTS**

On December 17, 1986, the Cook County Department of Corrections (the "DOC") hired Yvonne Averhart as a correctional officer, following her participation in a class action lawsuit that successfully challenged the DOC's hiring policies. Ms. Averhart's first thirteen years of service were relatively

24

unremarkable[1]. On July 23, 1999, however, Plaintiff was written up for misconduct and suspended for five days. Plaintiff successfully grieved this write up, and the discipline was subsequently expunged. Approximately one month later, on August 27, 1999, the United States Court of Appeals issued its opinion in *Valerie Smith v. Sheahan*, 189 F.3d 529 (7th Cir. 1998). The Seventh Circuit decision, which enabled Ms. Smith to proceed with her sexual discrimination suit against the Cook County Sheriff and his Department, expressly mentioned Ms. Averhart and the affidavit she had given in support of Ms. Smith's claim. Plaintiff contends that, following the issuance of the Seventh Circuit's decision, Defendants began disciplining her for minor and concocted infractions, and subjecting her to abuse and harassment, in retaliation for assisting Ms. Smith.

On September 9, 1999, Plaintiff was cited for having DOC property in her locker[2]. Plaintiff asserts that this was, at best, a minor offense, but was written up as a major infraction. Plaintiff grieved the September 9th write up, and wrote letters to various officials within the DOC chain of command, including Sheriff Sheahan. Plaintiff was then written up for minor acts of

---

[1] Plaintiff did, however, provide affidavits in support of a coworker's discrimination lawsuit in 1995 and 1997.

[2] Apparently, drug sniffing dogs reacted suspiciously to Plaintiff's locker. Defendants then searched Plaintiff's locker, while neither Plaintiff nor a union representative were present, and found cleaning supplies inside.

disrespect. Plaintiff grieved the write up, claiming that the write up was unfair and was the result of a hostile environment created by Superintendent Imhof. Plaintiff's grievance was denied on December 21, 1999.

On January 18, 2000, Plaintiff requested an administrative move, noting that she had been written-up five times since Supt. Imhof arrived in her Division[3]. On January 27, 2000, Plaintiff was transferred to Division V, and was written up for a "major act of insubordination" the next day, when she ignored an order to remove her car from a handicapped-parking space[4]. Plaintiff notes that, under the DOC's General Orders, a "Minor traffic offense on duty" is not considered serious misconduct[5].

---

[3] Plaintiff asserts that these write ups began, suspiciously, immediately after the Seventh Circuit issued its opinion in *Smith v. Sheahan,* 189 F.3d 529 (7th Cir. 1998). Plaintiff reluctantly acknowledges that she was first written up one month prior to the issuance of the *Smith* decision, but attempts to downplay its significance - thereby strengthening her claims of causation -- by noting that the July 23, 1999 write up was later expunged.

[4] Plaintiff's Statement of Additional Facts asserts that this write up was baseless, because she had heel spurs and had been issued a handicap parking placard. She then claims that the write up was issued at Supt. Imhof's direction, in retaliation for Plaintiff's transfer request. Pl.'s Add. Facts ¶ However, Plaintiff fails to cite to any evidence in the record in support of her claim that Supt. Imhof was involved in any way, or that he was attempting to retaliate against Plaintiff. As explained below, the Court will disregard this, and all, "additional facts" not properly supported by citations to the record and admissible evidence.

[5] Plaintiff seems to muddy the waters here. While it is true that the DOC's General Orders labels "Minor traffic offense

In the interim, Defendants had begun investigating allegations of impropriety against Plaintiff, including allegations that Plaintiff was maintaining improper relationships with inmates and was involved in smuggling contraband into the prison[6]. During the course of the investigation, inmate William Lang informed investigators that he had a personal relationship with Plaintiff, in violation of DOC rules. In the summer of 2000, Internal Affairs Investigator Kuksta monitored planned phone calls placed by Mr. Lang to Plaintiff on two occasions. Mr. Lang and Plaintiff discussed an apparent personal

---

on duty" as "Less Serious Misconduct," Plaintiff was written up for "Major Insubordination," not a minor traffic offense. Plaintiff would have the Court believe that ignoring the order to move her car must be a minor traffic offense, and not major insubordination, simply because the subject of the insubordination involved her automobile. This is nonsensical. Notably, the DOC Guidelines list "Major Insubordination" as serious misconduct.

[6] In her Statement of Additional Facts, Plaintiff claims that several inmates and other officers informed her that she was the target of an IAD investigation, and that "those white folks" were trying to set up Plaintiff. In support of this claim Plaintiff cites to "YA 97", and does not offer a citation to the Record. A review of Plaintiff's deposition transcript does reveal that Plaintiff testified to as much during her deposition. Notably, this testimony is not admissible at trial - it is double hearsay, and the statement against interest exception does not deem it admissible - and will, therefore, be disregarded by the Court. *See* Fed. R. Evid. 805 and Fed. R. Evid. 801 (d)(2)(D). Plaintiff does not offer affidavits or testimony from these alleged informants, or other admissible evidence in support of this claim.

relationship and planned to meet[7]. Notably, the meeting never took place. Plaintiff denied ever having made or received telephone calls from inmate Lang. However, Plaintiff did admit to sending and receiving correspondence from other inmates, whom she considered "lifelong friends."

On September 5, 2000, Plaintiff filed Charge NO. 210A04317 with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was unfairly written up, recommended for suspension, and subjected to different terms of employment in retaliation for having participated in the 1985 class action discrimination action, and in retaliation for giving deposition testimony on behalf of a coworker. Plaintiff claims that she was written up for minor infractions, such as using the commissary bathroom instead of the ladies locker room when the locker room lacked toiletries, and that Defendants failed to give her the appropriate paperwork to properly challenge these infractions[8].

---

[7] Plaintiff alleges that Investigator Kuksta's tactics were improper and deviated from IAD guidelines.

[8] Plaintiff also asserts, in her Statement of Additional Facts, that she was told that various supervisors encouraged other officers and inmates to come forward with damaging information about Plaintiff. Plaintiff cites to only her deposition testimony to support these assertions, and has not demonstrated that this double hearsay is admissible evidence. For example, Plaintiff asserts that "Capt. Milka informed plaintiff [sic] his supervisor told him to write [sic] counseling form on plaintiff," citing to her own deposition testimony. Pl.'s St. of Add. Facts at ¶ 125. Plaintiff has not argued or demonstrated that Capt. Milka or his supervisor were acting within the scope of his duties and as Defendants' agent when

Sometime thereafter, Plaintiff was arrested for theft by the Chicago Police. On January 18, 2001, Defendants notified Plaintiff that her inappropriate relationships with inmates and her theft arrest violated the DOC's general orders.

On May 3, 2001, the DOC's Employee Discipline Administrator notified Plaintiff that the allegations against her had been sustained and recommended that Plaintiff be terminated. Plaintiff sought and received a "Loudermill" hearing regarding the allegations on May 18, 2001. Defendants filed a Complaint with the Cook County Sheriff's Merit Board ("Board"), seeking Averhart's termination, on May 29, 2001. The Complaint alleged that Plaintiff made false official reports; engaged in conduct unbecoming an employee of the DOC; failed to comply with DOC rules, procedures, directives, etc.; knowingly associated with persons having known criminal records; and violated General Orders of the Sheriff's Office.

The Sheriff's Merit Board conducted a hearing on the Complaint on June 21, 2002, and concluded the proceedings on April 17, 2003. Plaintiff argued that the charges against her were overblown or fabricated. Plaintiff claimed that the charges were brought in retaliation for her having submitted an affidavit in the *Smith v. Sheahan case* and because she had reported other

making this alleged statement. As such, this is inadmissible hearsay testimony, and will be disregarded by the Court.

incidents she believed to be improper. The Merit Board issued its final determination on June 11, 2003, finding that the Sheriff had produced sufficient evidence to sustain all charges against Plaintiff. The Merit Board found that Plaintiff's termination was retroactive to May 29, 2001. Plaintiff filed suit in the Illinois State courts, seeking review of this administrative decision.

In the interim, Plaintiff had filed another charge with the EEOC. On January 23, 2002, Plaintiff filed charge Number 210A201475, alleging that Defendants suspended her from her employment on May 29, 2001, in retaliation for having previously filed Charge No. 210A04317.

**PROCEDURAL HISTORY**

Plaintiff first filed suit against Defendants on January 18, 2001, alleging that Defendants suspended her without pay from her job in retaliation for speaking out against sexual harassment and filing an EEOC Charge against Defendant, in violation of Title VII. The case was initially assigned to Judge George W. Lindberg. On February 21, 2002, the parties consented to proceed before a Magistrate Judge, and on February 25, 2002, the case was assigned to this Court.

Plaintiff filed her second lawsuit on June 4, 2002, alleging that Defendants retaliated against her, in violation of Title VII, and deprived her of her First Amendment Rights, in violation

of 42 U.S.C. § 1983. The case was initially assigned to Judge Ronald A. Guzman. On March 7, 2003, Judge Guzman denied Defendants' Motion to Dismiss. The parties then consented to proceed before this Court on April 25, 2003, and the cases were subsequently consolidated.

**Summary Judgment Standards**

Courts should grant summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985). Initially, the moving party bears the burden of showing that the record contains no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The non-moving party must present more than a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Additionally, conclusory allegations are not sufficient to survive summary judgment. *Nowak v. St. Rita High School*, 142 F.3d 999, 1002 (7th Cir. 1998). The non-moving party must present sufficient evidence to support each element of her case on which she will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

Courts do not make "credibility determinations nor choose between competing inferences" at the summary judgment stage. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993). Further, the court must view the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

In addition, pursuant to Northern District of Illinois Local Rule 56.1, the parties must support all disputed facts with "specific references to . . . parts of the record." Courts need not "scour the record" in an attempt to locate the relevant information supporting the Rule 56.1 claims. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). The Seventh Circuit has repeatedly "sustained the entry of summary judgment when the nonmovant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts." *Id.; see also Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000) (all relevant facts denied without supporting documentation must be accepted as true provided the facts are "properly supported by references to the record or other evidentiary materials.")

In this case, Defendants have filed a Motion to Strike Plaintiff's Responses to Defendants' Statement of Material Facts, as well as Plaintiff's Statement of Additional Facts. In responding to the Motion, Plaintiff not only challenged

Defendants' assertions, but improperly used the opportunity to highlight oversights she made in her Response and Statement of Additional Facts. The Court will not directly rule on this Motion, but notes that the Summary Judgment Motion will be decided under the guidelines set forth in Local Rule 56.1. Factual assertions not properly supported by accurate record citations, and those supported only by hearsay testimony, will be disregarded. *See generally, Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994)(only admissible evidence may be considered on summary judgment.)

**DISCUSSION**

**1. Title VII Retaliation**

The retaliation provision of Title VII forbids an employer from discriminating "against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter [42 U.S.C. §§ 2000e to 2000e-17], or because he has made a charge . . . or participated in any manner in an investigation, proceeding, or hearing under this subchapter [42 U.S.C. §§ 2000e to 2000e-17]." 42 U.S.C. § 2000e-3(a). A plaintiff has two routes to surviving summary judgment in a Title VII retaliation case; by presenting direct evidence of retaliation or by satisfying the indirect method of proof announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Direct evidence is defined as evidence that "if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Randle v. LaSalle Telecomm. Inc.*, 876 F.2d 563, 569 (7th Cir. 1989). Direct evidence includes discriminatory statements made by decision makers. *Gorence v. Eagle Food Ctrs., Inc*. 242 F.3d 759, 762 (7th Cir. 2001). The statements must be made contemporaneously with, or causally related to, the employment decision and must demonstrate the speaker's discriminatory intent. *Markel v. Bd. of Regents of Univ. of Wisc. Sys.*, 276 F.3d 906, 910 (7th Cir. 2002)(*citing Conley v. Vill. of Bedford Park,* 215 F.3d 703, 711 (7th Cir. 2000)). Finally, evidence of inappropriate remarks not shown to be directly related to the employment decision may not support a direct-method-of-proof case, but, in connection with other evidence, might support a case under *McDonnell Douglas*'s indirect method of proof. *Gorence*, 242 F.3d at 762.

To establish a *prima facie* case of retaliation under the indirect method of proof, Plaintiff must show that: (1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite meeting her employer's legitimate expectations, she suffered a materially adverse employment action; and (4) she was treated less favorably than similarly situated employees who did

not engage in statutorily protected activity. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir.2002). If Plaintiff satisfies her *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. "If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, [it] is entitled to summary judgment. Otherwise, there must be a trial." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir.2002).

In *Stone,* Judge Posner clarified a plaintiff's burden under both the direct and indirect methods of proof. The *Stone* decision focuses primarily upon the proper role of causation under both methods of proof. *Id. at 643.* More pertinent to this case, however, is Judge Posner's reiteration of the standard rule that if "the defendant presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if he had no retaliatory motive . . . the defendant is entitled to summary judgment, because he has shown that the plaintiff wasn't harmed by retaliation." *Id.* at 644. This is true under both the direct and indirect methods of proof. *Id.* at 644.

In this case, the parties clash over whether Plaintiff has produced admissible direct evidence of discrimination[9], whether Plaintiff can satisfy the *McDonnell Douglas* test, and whether Plaintiff has complied with Local Rule 56.1. The Court need not address each of these disputes in detail, however, because Defendants have produced unrebutted evidence that Plaintiff would have been disciplined and suspended even in the absence of retaliatory intent[10].

In this case, Defendants have demonstrated that Plaintiff was charged with violating multiple DOC General Guidelines, and

---

[9] Plaintiff asserts that she has produced direct evidence of discrimination. In her brief, Plaintiff contends that, at her Merit Board hearing, coworker Phylis Dotson testified that Chief Kurtovich said "I'm gonna get that bitch" and "Averhart is on my last nerve." Plaintiff then asks the Court to impute Chief Kurtovich's statements to Officers Imhof and Kutska - because, she claims, the three are friends. *See generally, Walker v.* Glickman, 241 F.3d 884, 888 (7th Cir. 2001). Notably, Plaintiff makes little or no effort to prove that these individuals were actual decisionmakers or even that they possessed the authority to recommend that Plaintiff be investigated or suspended. The Court finds that these "[i]solated and attenuated statements are insufficient to establish discriminatory intent on the part of the Defendant." *Geier v. Medtronic,* Inc., 99 F.3d 238, 242 (7th Cir. 1996) (To be probative of discrimination, isolated comments must be contemporaneous with the adverse action or causally related to the decision making process.)

[10] Plaintiff's Response brief confusingly references numerous paragraphs of her Statement of Additional Facts – many of which are not properly supported by admissible evidence and/or proper citation to the Record - that, she claims, shows that she has suffered multiple adverse job actions. Notably, Plaintiff's Complaints and EEOC Charges reference only Plaintiff's suspension and the alleged conspiracy to sully Plaintiff's record as adverse actions.

that she was disciplined accordingly. Plaintiff argues that the charges were bogus, and contends that she demonstrated at the merit board hearing that the "charges are unfounded." Pl.'s Resp. at 15. Plaintiff claims that many of the charges against her were minor incidents, blown out of proportion in an effort to build a case for her termination - such as her parking in a handicapped parking spot; keeping cleaning supplies in her locker; and using the commissary bathroom. She also claims that she damaged the credibility of the only eyewitness against her at the Merit Board hearing by showing that he contradicted himself. Obviously, the Merit Board disagreed, recommending that Plaintiff be terminated for her various infractions.

Plaintiff has not produced any admissible evidence demonstrating that these charges were not valid. *See generally, Shea v. Lovejoy, Inc.,* 2004 WL 1194748 (N.D. Ill. May 27, 2004) (noting that an employee's perception of his performance is immaterial to the question of the employer's reasonable beliefs). Nor has Plaintiff pointed to any evidence demonstrating that the Merit Board was influenced by retaliatory intent, or any other improper motivation, in sustaining the charges against her.

Plaintiff attempts to persuade the Court that the charges were part of a smear campaign, by showing that other officers committed similar or more serious infractions, but were not suspended. *See* Pl.'s Resp. at 12. However, Plaintiff fails to

cite to any admissible evidence in support of these claims. For example, Plaintiff claims that Officer Sullivan improperly impersonated a records officer and brought an inmate to court, despite direct orders not to do so. *Id.* Plaintiff asserts that Officer Sullivan received no discipline for this infraction. In support of these assertions, Plaintiff offers only her own deposition testimony. Although self serving deposition testimony may be sufficient to defeat summary judgment, the testimony must be based upon personal knowledge. *See Payne v. Pauley,* 337 F.3d 767, 773 (7th Cir. 2003). Here, Plaintiff has not directed the Court to evidence establishing that she had personal knowledge of the underlying incident or of Officer Sullivan's disciplinary history - nor that of Officers Collins, Caset Rios, Daniel Duh, or Latanya McCulloh. *See* Fed. R. Evid. 602 (noting that a witness may not testify to a matter unless she introduces sufficient evidence to demonstrate that she has personal knowledge of the matter.)

Even more confusing is Plaintiff's chart categorizing the race and sex of all individuals accused of associating with an inmate. The evidence tends to show that, in some instances, minorities were found guilty of certain charges more frequently than white men. This evidence would certainly have a place in a discrimination lawsuit, but fails to shed much light on Plaintiff's retaliation claims. To the contrary, the evidence

tends to support Defendants' position by demonstrating that 12 of the 27 individuals found guilty of associating with inmates were terminated, while others were suspended or resigned.

None of this serves to rebut Defendants' evidence that Plaintiff was found to have violated the DOC's general guidelines, that she was provided a full and fair hearing on the charges, and that the Merit Board, after weighing the evidence, recommended that she be terminated. Under these circumstances, the Court finds that the Defendants have offered a legitimate explanation for terminating Plaintiff, which Plaintiff has failed to rebut. Therefore, the Court grants Defendants Motion for Summary Judgment on Plaintiff Title VII retaliation claim.

**2. Section 1983- First Amendment Retaliation**

The parties dispute whether res judicata precludes Plaintiff from pursuing her First Amendment claim, because she failed to raise the claim before the Merit Board. *See Schofield v. Nikkel,* 314 Ill. App. 3d 771, 780, 731 N.E.2d 915 (2000). Regardless of whether the Merit Board's decision precludes Plaintiff from raising her claim here, or whether Defendants waived the issue of res judicata by failing to raise it as an affirmative defense, Plaintiff has not satisfied her burden under *McTigue v. City of Chicago,* 60 F.3d 381, 382 (7th Cir. 1995).

It is well established that a local government unit may not be held liable under § 1983 under the doctrine of respondeat

superior. *Monell v. Dept. of Soc. Servs.* 435 U.S. 658, 691 (1978). Instead, a plaintiff must produce evidence showing that the municipality's policy caused her injury. Plaintiff may do so by showing that: 1) Defendants had an express policy that caused a constitutional deprivation; or 2) had a widespread practice that was so well settled as to constitute custom or usage with the force of law; or 3)a policymaker inflicted the constitutional injury. *McTigue*, 60 F.3d at 382.

Although Plaintiff's Complaint references General Order 1.8 as the offending "gag order," Plaintiff neither attached this Order to her Complaint, nor directed the Court's attention to General Order 1.8 in her Rule 56.1 Statement. In her Response Brief, Plaintiff abandons any attempt to satisfy the first or second prongs of *McTigue,* and instead claims that Investigator Kuksta and Superintendent Imhof were policymakers. But Plaintiff has not produced any admissible evidence in support of her assertion that these individuals were policymakers.

And even if Plaintiff could establish that Investigator Kuksta and Superintendent Imhof were policymakers, Defendants' ability to show that it would have terminated Plaintiff regardless of her protected speech, prevents her from satisfying the test announced in *Mt Healthy City School Dist. Bd. Of Ed. v. Doyle,* 429 U.S. 274 (1977) In *Mt. Healthy,* the Supreme Court directed courts to determine whether the employee's speech is

protected; whether the speech was a motivating factor in the retaliatory action; and finally, whether the defendant established that the action would have been taken in the absence of the employee's speech. As discussed in detail above, Defendants have presented unrebutted evidence that Plaintiff's suspension was based upon the valid charges against her. *See also, Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004)

Because Plaintiff cannot satisfy her burden under *McTigue,* the Court grants Defendants' Motion for Summary Judgment on Plaintiff's Section 1983 claim.

**CONCLUSION**

Having carefully reviewed the entire record, the Court finds that Plaintiff has failed to produce admissible evidence giving rise to a genuine issue of material fact with regard to any of her claims. The Court acknowledges that Plaintiff had a difficult time interacting with her supervisors, and would concede that Plaintiff likely believes she is the victim of retaliation. Nevertheless, her evidence fails to support her claims. Plaintiff's admissible evidence is simply insufficient

to create a genuine issue of material fact. Accordingly,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment be, and the same hereby is, GRANTED.

Dated: September 9, 2004

E N T E R:

ARLANDER KEYS
United States Magistrate Judge